Elsworth agt. Muldoon.

# SUPREME COURT.

## HENRY ELSWORTH agt. KIEREN MULDOON.

The *redemption of land*, by a *judgment debtor*, sold on execution against him, is governed by the statute. (2 *R. S.* [*Edm. ed.*], 384, § 46.)

And it is no valid objection to such redemption that the judgment debtor had, subsequent to the sale, conveyed the premises to a *receiver*, appointed for the benefit of his creditors. Such a conveyance, in its nature, creates a trust for creditors. Subject to the execution of the trust the reversion belongs to the execution debtor, and he has sufficient interest to redeem.

The statute gives the right of redemption to an execution debtor, irrespective of the situation of the title. (*The decision in Husted* agt. *Dakin*, 17 *Abb.*, 137, *disapproved.*)

A sale of land under an execution is not conclusive against the execution debtor before the expiration of one year from the sale. (2 *R. S.*, 370.)

Where the execution debtor, in proper time, produced the sheriff's receipt for $72.05, containing the title of the cause in the judgment upon which the premises were sold, stating that "said money was so paid by him to redeem property sold under an execution in the above entitled cause on the 13th day of April, 1848, situated in the Twelfth ward of the city of New York; the above amount being in full for the purchase-money and interest at ten per cent for all the property sold by me on that day under said execution;" upon which receipt was indorsed in the handwriting of the attorney for the judgment debtor, stating "I paid the sheriff the above money and took the receipt for F. Price" (the judgment debtor):

*Held*, that this paper was, in substance, a sufficient certificate of redemption under the statute of 1847.

It was not necessary that this certificate of redemption should be proved or acknowledged or filed. The redemption under the statute was complete when the money was paid to the sheriff.

As in this case the receipt of the sheriff was an official act, and all the parties were deceased who took part in the redemption, it was competent, after proof of such decease, to read the paper in evidence.

Elsworth agt. Muldoon.

*N. Y. Special Term, January*, 1873.

PARSONS & KETCHUM, *for plaintiff.*
EGBERT & ARNOUX, *for defendants.*

FANCHER, *J.*—The plaintiff has shown sufficient actual possession to enable him to prosecute this proceeding to determine the claim of the defendant to the premises in question.

The principal inquiries are, 1st. Whether Francis Price, the original owner, could, at the time it was attempted, redeem the premises from the execution sale thereof; and, 2d. Whether he did effectuate such redemption. If these inquiries are answered in the affirmative, the asserted claim of the defendant to the premises is expunged by the superior title of the plaintiff.

Lands were formerly sold under execution in the same manner as personal property, and, until 1820, the rule in New York was, to sell under execution the real estate absolutely at auction, upon due notice, without appraisement, and without any subsequent right of redemption. The sheriff thereupon executed a deed to the purchaser, which vested the defendant's title in the purchaser from the time of the sale. It was found that sales of real estate on execution had been attended with much oppressive speculation upon the necessities of the debtor, and therefore the legislature of this state provided by statute an effectual relief from the peremptory and sweeping desolation of an execution sale.

The Revised Statutes contain the following language: "Such redemption may be made:

" 1. By the person against whom the execution was issued and whose right and title were sold in pursuance thereof; or,

" 2. If such person be dead, by his devisee of the premises sold, if the same shall have been devised, and if the same shall not have been devised, by the heirs of such person; or,

" 3. By any grantee of such person who shall have acquired an absolute title by deed, sale under mortgage or under an

execution, or by any other means, to the premises sold, or to any lot, tract, parcel or portion which have been separately sold" (2 *R. S., Edmonds' St.,* 384, § 46).

The dawn of this benign provision for redemption first appeared in the enactment of April 12th, 1820 (*Laws of 1820, chap.* 184, § 3). It was passed to repress a mischief against which the law did not provide, and, according to true interpretation, it must be treated as a remedial or beneficial statute, and be so read as to cure the former defect in the law and to advance the remedy intended. If the directions of the statute be complied with, the relief provided by it is secured. It is only necessary, in this case, to give to the statute the natural and obvious sense which its language imports, without resorting to any subtle or forced construction, either to limit or extend its operation, and it will be plain that the statute conferred on Francis Price the right to make the redemption of the premises in question from the sale under the execution issued against him. It is conceded that the redemption was in due time; that he was "the person against whom the execution was issued, and whose right and title were sold in pursuance thereof." He was, therefore, the very person on whom the right of redemption was conferred by the express language of the first subdivision of the statute; yet it is argued that, by reason of his conveyance to a receiver, he was excluded from all redemption interest in the land, and could not, by his redemption, extricate it from the execution sale. The argument against the right of redemption imports into the statute language which is not to be found there; and were the statutory right of redemption fettered by such a restriction, doubtless its removal would, long ago, have been effected by the legislature.

The statute does not say that the person against whom the execution was issued may redeem his lands from an execution sale, *provided* the title by grant of the lands remains in him. On the contrary, it gives the right of redemption to the execution debtor, irrespective of the situation of the title.

Elsworth agt. Muldoon.

Suppose a sale of land on an execution for $100, and that the owner the next day should sell the land for $100,000, and execute a deed with full covenants to the grantee, from whom he should, at the same time, receive the full consideration. While the grantee might redeem the land from the execution sale, it would not be his duty, and perhaps not his inclination to do so. It would be the duty of the grantor to make the redemption, and his interest would require it to be done, so that he might avoid liability on his covenants. Should he attempt to make the redemption, is it possible he could be successfully thwarted in the attempt by the pretense that "the right of redemption is such a right *in rem* that it cannot be exercised except by one having, at the time, the legal estate in the premises?" Does not the statute expressly give the right of redemption to "the person against whom the execution was issued and whose right and title were sold in pursuance thereof?" Must he be deprived of the benefit of redemption and subjected to an action on his covenant of title, because of the vague notion that the redemption is a right *in rem* beyond his reach? A sale of land, under an execution, is not conclusive before the expiration of one year from the sale (2 *R. S.*, 370). During that time, the debtor, his devisees or heirs, or his grantees, may redeem. Nor can the deed be given by the sheriff until three additional months have elapsed, during which other judgment creditors and mortgagees may, in the manner provided by statute, acquire the interest of the purchaser at the sale. In *Chautauque County Bank* agt. *Risley* (19 *N. Y.*, 373), it was held that a debtor's conveyance of his real estate to a receiver, although it may be compulsory, is, in its nature, simply and purely the creation of a trust for the payment of the debts on which the proceedings in equity are founded. The receiver is the trustee, and discharges his duty under the direction of the court. To hold otherwise would be to convert the creditor's suit into a species of execution on the judgment for the specific performance of the lien, so that a title confessedly based on the

debtor's involuntary conveyance to an officer of the court may relate back to the time when the judgment became a lien. For this conclusion there is no principle or precedent.

The question in *Husted* agt. *Dakin* (17 *Abb.*, 137) was, who was entitled to certain surplus moneys arising on a sale under foreclosure. The referee awarded the surplus moneys to Husted, who had foreclosed the interest of Dakin in the mortgaged premises at an execution sale. Dakin, the judgment debtor, had attempted a redemption by tendering to the sheriff the requisite amount to redeem. The court, in general term, appears to have held that Dakin's efforts to redeem were ineffectual. But I think the reasoning of the judge who delivered the opinion in that case totally ignores the express language of the statute touching the right of the judgment debtor to redeem; and that the decision there made is without any sound principle or any adjudged case to support it. The learned judge cites, as an authority, *Shepard* agt. *O'Neil* (4 *Barb.*, 126), a reference to which, and to the cases there mentioned, will show that the principle of the authority referred to was misapprehended when the citation was made.

HAND, J., in *Shepard* agt. *O'Neil*, said, " I believe it is well settled that, by a sale of land on a judgment, the lien of the judgment and the right to redeem are gone." Several authorities are cited for this obvious proposition. But the principle of that authority, that the lien of a judgment is lost when a sale under execution takes place, and that the right to redeem is also gone, is this, that a judgment *creditor* loses his lien and his right to redeem, when such a sale by virtue of the judgment takes place. It is not a loss of any right to redeem by the judgment *debtor*. The authorities cited in the case last referred to are authorities for some familiar propositions, *e. g.*, that a debt is merged in the judgment; that a sale of land under execution extinguishes the lien of the judgment; that a judgment creditor, by such a sale, loses the lien of the judgment and his right to redeem,

and the like. None of them are authority for saying that the right of a judgment debtor to redeem land from an execution sale is in any way restricted, in case the redemption is made within a year from the sale.

In *Bodine* agt. *Moore* (18 *N. Y.*, 250), the correct principle is stated. The Kingston Bank held a certificate of sale, which had been running about four months. The debtor did not in person or by any affirmative act redeem from the sheriff's sale. His land was, however, converted into money by sale under a prior mortgage, and a portion of that money, sufficient for the purpose, was paid over in satisfaction of the claim which the bank had under the certificate. The bank accepted the money, and this was in effect, as the court of appeals held, a redemption from the sheriff's sale. It was effected with moneys raised out of the estate of the judgment debtor, which, as the court said, the bank would have been bound to accept if tendered by the debtor himself. It was further said, in the opinion in that case, that "a redemption by the debtor renders a sheriff's certificate null and void as though the sale had never taken place." The very judgment on which the sale was had becomes again a lien, if it was not fully satisfied by the bid, and the land may be again sold. A redemption out of the debtor's funds and effectuated by act of law should have the same effect; it is virtually made by the debtor. If the requisite amount of the surplus had been paid into the debtor's own hands and he had paid it over to the bank, it would have been a perfect and exact redemption from the sheriff's sale within the statute.

In the light of such authority there can be no difficulty in perceiving that Price had a right to redeem by the very terms of the statute (2 *R. S.*, 570, § 46). The objection that his interest was totally divested by the conveyance to Latting is without force. Whether he had any interest in the land or not, the statute gave him the right of redemption; but his interest was not wholly divested by the conveyance to the receiver, Latting. That, as already remarked, was a convey-

ance which in its nature created a trust for creditors. Subject to the execution of the trust the reversion belonged to Price, and he had sufficient interest to redeem (1 *R. S.*, 730, § 67). So soon as the judgment and charges were paid either by the judgment debtor or out of his property the land conveyed to the receiver Latting would revert to the judgment debtor, and probably when the statute of redemption was framed it was designedly worded to cover precisely such, as well as all other rights of the judgment debtor respecting the redemption of his lands from an execution sale. If the principle that the right of redemption can only be exercised by one having the legal estate in the premises be applicable, as probably it is, to redemptions from tax sales, and to strangers who would unjustly intermeddle with the estate under an execution sale to the prejudice of the real party in interest, it has no such application upon reason or authority to the judgment debtor himself, whose land is sold under execution.

2. The next important question is whether Francis Price did redeem the premises from the sale and execution through which the defendant claims title. The paper, which is dated April 10th, 1849, and signed by John J. V. Westervelt, sheriff, is not only a receipt for seventy-two dollars and five cents, but it contains the title of the action in the supreme court, in which the judgment was obtained, whereon the execution issued under which the sale in question was made.

It also recites the receipt from Francis Price, the judgment debtor, of seventy-two dollars and five cents, and then follows this language: " Said money so paid by him to redeem property sold under an execution in the above entitled cause on the 13th day of April, 1848, situate in the Twelfth ward of the city of New York, the above amount being in full for the purchase-money and interest at ten per cent for all the property sold by me on that day under said execution."

An attorney-at-law made this redemption, and that he acted for Francis Price is shown by a memorandum on the receipt in his handwriting, as follows: " I paid the sheriff the above

money and took the receipt for F. Price." This paper is in substance a sufficient certificate of redemption according to the fifth section of the statute of 1847, is signed by the officer who in contemplation of law made the sale, and states "all such facts, transpiring before him at the making of such redemption, as are sufficient to show the fact of such redemption" (2 *Laws of* 1847, *chap.* 410, 508).

It was not necessary that this certificate of redemption should be proved or acknowledged or filed. The redemption under the statute was complete when the money was paid to the sheriff. The sale of the premises under the execution and the certificate of sale which he had given became void by the redemption, and thenceforth were of no force or effect (2 *R. S.*, 371, § 49). As the receipt of sheriff Westervelt was an official act, and all the parties are deceased who took part in the redemption, it was competent, after proof of such decease, to read the paper in evidence.

The memoranda of the attorney of Price, written thereon, was also admissible in evidence (*Leland v. Cameron*, 31 *N. Y.*). Such writings are admissible within the principle of numerous authorities relating to the entries and memoranda of deceased persons. The receipt of the sheriff was a written paper against his interest, for by it he was charged for the amount of money mentioned in the receipt; and the principle applicable to such a paper is that it proves not only the simple fact of payment, but it may be received to every incidental matter stated in the declaration, even in an action between third persons (*Middleton v. Melton*, 10. *Barn. & Cress.*, 317). The rule has been asserted to the extent of a disregard of all reference to the circumstance of any privity between the deceased and the defendant (*Gross v. Wattington*, 8 *Barn. & Cress.*, 556; *Whitmash v. George*, 3 *Brod. & Bing.*, 132).

It is said, in the text of 1 *Phil. on Ev.*, *p.* 298, that "the acknowledgments by deceased stewards, reeves and baliffs, in their books, of the receipt of money for which they have been

Elsworth agt. Muldoon.

accountable, are very frequently adduced in evidence by their employers, or those claiming under them, *or by strangers;*" and, at page 299, it is remarked that "receipts for the payment of money, given to the person making the payment, appear to be admissible, after the death of the receiver of the money, to prove the fact of its having been received, though there exist no privity between the deceased and the party against whom the evidence is tendered." Lord ELLENBOROUGH said, in *Harrison v. Blades*, 3 *Camp.*, 458, that a tax gatherer's receipts would be evidence, after his death, to prove who was the occupier of certain premises. For further illustrations of the rule, see *Thompson v. Stevens*, 2 *Nott & McCord*, 493 ; *Chase v. Smith*, 5 *Vern. Rep.*, 559 ; *Barker v. Ray*, 2 *Russ. Rep.*, 31, *note b; Wilbor v. Selden*, 6 *Cow.*, 162; *Leland v. Cameron*, 31 *N. Y.*

It follows that the claim of title made by the defendant, founded upon the sale under the execution against Francis Price, is of no validity.

There should be judgment for the plaintiff, with costs, and the judgment should provide that the defendant, and all persons claiming under him, be forever barred from all claim to any estate of inheritance or freehold, or term of years, in possession, reverson or remainder, to the premises described in the notice by which this proceeding was commenced.